20 MAG  1270  ORIGINAL

Approved: _____
MICHAEL D. LONGYEAR / JACOB WARREN
Assistant United States Attorneys

Before:   THE HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA           :   **COMPLAINT**

          - v. -                   :   Violations of
                                       18 U.S.C. §§ 1951,
TYRIQUE SNOWDEN,                   :   924(c), and 2

                    Defendant.     :   COUNTY OF OFFENSE:
                                       BRONX
                                   :

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       TIMOTHY AUMAN, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, and charges as follows:

### COUNT ONE

       1.   On or about August 28, 2019, in the Southern District of New York and elsewhere, TYRIQUE SNOWDEN, the defendant, and others known and unknown, attempted to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, SNOWDEN attempted to commit an armed robbery of an individual believed to be engaged in narcotics trafficking in the Bronx, New York and aided and abetted the same.

       (Title 18, United States Code, Sections 1951 and 2.)

## COUNT TWO

2. On or about August 28, 2019, in the Southern District of New York and elsewhere, TYRIQUE SNOWDEN, the defendant, and others known and unknown, during and in relation to a crime of violence which he may be prosecuted in a court of the United States, namely, the attempted Hobbs Act robbery charged in Count One of this Complaint, knowingly did use and carry a firearm, and in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

3. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement personnel and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my conversations with other law enforcement officers, my review of law enforcement reports, and my personal participation in this investigation, I learned the following in substance and in part:

   a. On or about August 28, 2019 at approximately 11:30 p.m., the New York City Police Department received a 911 call reporting gunfire in the lobby of an apartment building located on East 198th Street, Bronx, New York (the "Apartment Building").

   b. NYPD Officers responded to the Apartment Building and interviewed an individual who stated that he had been robbed (the "Victim"). The Victim told NYPD officers the following, in substance and in part:

          i.    The Victim was smoking in the lobby of the Apartment Building when two men entered the lobby – one wearing a red hooded sweatshirt ("Robber-1"), and the other a black hooded sweatshirt ("Robber-2," and together with Robber-1 the "Robbers") – and approached the Victim. The Victim attempted to enter the Victim's apartment, but the Robbers stopped the Victim and snatched a gold chain off of the Victim's neck. The Victim stated that the Victim attempted to take the gold chain back, but one of the Robbers shot at the Victim.

          c.    NYPD officers recovered a cellular phone that one of the Robbers dropped in the lobby of the Apartment Building. The cellular phone was inside a case that had a pocket to hold cards. Inside the pocket was an identification card bearing the name "Tyrique Snowden."

          5.    Based on my review of surveillance video from the Apartment Building, I have learned the following, in substance and in part:

          a.    At approximately 11:36 p.m. on August 28, 2019, the Victim was standing in the lobby of the Apartment Building, when three individuals – two in black hooded sweatshirts, and one in a red hooded sweatshirt – ran into the lobby toward the Victim. One of the individuals wearing a black hooded sweatshirt appeared to be holding a gun.

          b.    The two individuals wearing black hooded sweatshirts cornered the Victim, and one of them appeared to grab the gold chain worn by the Victim. The individuals in the black hooded sweatshirts then ran out of the lobby.

          c.    The Victim chased after the individuals in the black hooded sweatshirt, and the individual wearing the red hooded sweatshirt, who was standing at the door to the entrance of the lobby, appeared to point a gun at the Victim and fire the gun. The Victim hid for cover as the individual in the red hooded sweatshirt fired the gun.

          d.    As the individual in the red hooded sweatshirt was exiting the building, he appeared to drop a cellphone on the ground.

          6.    On or about February 3, 2020, TYRIQUE SNOWDEN, the defendant, entered the NYPD's 52nd Precinct in the Bronx and voluntarily agreed to speak with NYPD officers about the events

that took place in the lobby of the Apartment Building on August 28, 2019. NYPD officers advised SNOWDEN of his Miranda rights. SNOWDEN waived those rights and agreed to speak with NYPD officers in a video and audio-recorded interview. SNOWDEN told the officers the following, in substance and in part:

    a. SNOWDEN identified himself as the individual wearing the red hooded sweatshirt in the surveillance video (see supra ¶ 5).

    b. SNOWDEN said that another individual told SNOWDEN about the Victim, including that the Victim wore jewelry and that the Victim had a duffel bag containing a large amount of money and pounds of marijuana.

    c. SNOWDEN said that he intended to rob the Victim of the jewelry, money, and marijuana.

    d. SNOWDEN admitted that he fired a gun at the Victim.

    e. SNOWDEN admitted that a chain was taken from the Victim, that a person SNOWDEN knew pawned the chain, and that SNOWDEN received approximately $4,800 for the chain.

    7. Following the interview with NYPD officers, TYRIQUE SNOWDEN, the defendant, was taken into custody.

    WHEREFORE, the deponent respectfully requests that TYRIQUE SNOWDEN, the defendant, be imprisoned or bailed, as the case may be.

                TIMOTHY AUMAN
                Special Agent
                HSI

Sworn to before me this
4th day of February, 2020

THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK